## Case No. 7,028.

### The INDUSTRY.

[1 Gall. 114.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

1 [Reported by John Gallison, Esq.]

G. Blake, for the United States.
S. Dexter, for claimant.

STORY, Circuit Justice. An information has been filed against the schooner Industry, upon a seizure on account of certain foreign goods, exceeding $400 in value, having been unladen from said vessel, at the port of Edgartown, in the night time, without a permit, &c. contrary to the statute in such case provided. The facts are admitted to be as stated in the decree of the district court; and by that decree it appears, that the schooner Industry is a foreign vessel, and being bound on a voyage from the Havana to New York, put into Edgartown, in Martha's Vineyard. While lying there, in February, 1809, 400 boxes of cigars and several boxes of sugar, parcel of her cargo, were unladen, in the night time, without a permit, and put on board the brig Hannah, then lying at the same port, and bound for Boston, without the duties thereon having been paid or secured. The value of these goods exceeded $400. The schooner was not permitted to proceed to New York, the collector of the port considering, that foreign ships, under the 9th section of the embargo act of April 25, 1808, c. 66 [2 Stat. 501], were prohibited from going from one port to another of the United States. The residue of the cargo was therefore entered and bonded at the custom house at Edgartown, and shipped coastwise to New York. The forfeiture is claimed under the 50th section of the collection act of March 2, 1799, c. 128 [1 Stat. 665, c. 22], which provides, that "no goods, wares, or merchandize, brought in any ship or vessel from any foreign port or place, shall be unladen or delivered from such ship or vessel within the United States, but in open day," except by special license, nor at any time without a permit from the collector, &c. on pain of forfeiture of the goods, &c. and also of the vessel, if the value of the goods, &c. exceed $400. [3]

The facts of this case bring it completely within the terms of the 50th section. But it is contended on behalf of the claimant, that though within the terms, the case is not within the purview, of that section. That it is designed to apply solely to vessels which had arrived at their ports of destination and discharge, and not to arrivals at any intermediate ports, as was the case of the Industry. And the 27th section of the act has been cited in support of the argument. That section (the 27th section) clearly applies to vessels, which have not reached their port of destination and discharge. It provides, that if after the arrival of any ship or vessel la-

3 See The Harmony [Case No. 6,081].

den with foreign goods, and bound to the United States, within the limits of the districts of the United States, or within "four leagues of the coasts thereof, any part of the cargo of such ship or vessel shall be unladen for any purpose whatsoever, from out of such ship or vessel, as aforesaid, before such ship or vessel shall come to the proper place for the discharge of her cargo, or some part thereof," the part so unladen shall be forfeited, &c. Now the argument is, that as this section covers the case, and contains different forfeitures from the 50th section, it ought not to be deemed to be within the purview of the 50th section, because in this way the same offence would be punishable with various penalties. And it is said, that the legislature might with good reason omit a forfeiture of the vessel on account of an illegal unlading at an intermediate port, because in such case no fault or negligence could be justly imputable to the owner, on account of his absence from the scene of action.

The argument is certainly not without weight, and is favored by the natural construction of the words "before such ship or vessel shall come to the proper place for the discharge of her cargo, or some part thereof." But it should be considered, that revenue laws rarely proceed upon the ground of such a distinction, as to the owner. In general the act of the master, who is the confidential agent of the owner, is imputed to the owner; or at least the latter is held responsible for the acts of the former, so far as the laws inflict forfeitures of the property on account of illegal traffic. Nor, is it sufficient to authorize a court to extract a case from the express prohibitions of one section of an act, that already the same offence is punished by a different penalty in another section. If the wording of both sections clearly embrace the same case, which is to be held nugatory? I know of no principle of law, that would enable me to reject either. If, therefore, it should be proved, that the 50th section might embrace some cases (for clearly it cannot reach all) within the prohibitions of the 27th section, I am not aware how I would get over the express language. I should be obliged to hold the forfeiture cumulative in such cases, unless the legislature had enabled me, by direct or constructive exceptions, to escape from such a conclusion. The prohibitions of the 27th section certainly do not reach cases, where the illegal unlading is after the arrival of the vessel at her intended port of discharge. If the words of that section, "after the arrival, &c. within the limits of any of the districts of the United States," are to be construed as embracing an arrival in any port of entry or of delivery within such districts, which is not the port of intended discharge of the cargo, so as to make the unlading thereof in such port illegal within the

same section, then it may reach cases within the express language of the 50th section. But perhaps there is some reason to doubt, whether the 27th section contemplates any case of unlading in any place within a district, which is a port of entry or delivery. The sections, from the 23d section to the 30th section, manifestly contemplate a progressive advancement in the voyage towards our ports; and the 30th section seems the first which contemplates an arrival of the vessel within the limits of a port, at which an officer of the customs resides. From that section onwards to the 50th section, the provisions seem to refer to vessels actually in port. There seems, therefore, some reason to contend, that the 27th section is confined to cases of unlading before the arrival of the vessel at a port of delivery, or at least to an unlading without such port. On this however I give no opinion.

It seems to me, that the 50th section clearly embraces all cases of the unlading of goods, without a permit, in any port or place within any district of the United States. It is not even stated in the section, that such unlading is to be in a port, in order to make the forfeitures attach; much less is it asserted, that the unlading must be in the port of intended discharge. The public mischiefs of such an illegal unlading are equally great, whether it be at the port of destination or not. The object of the law is, to prevent frauds upon the revenue, which is essentially aided by making it for the interest of the owner of the ship, as well as of the owner of the goods, to exercise due vigilance, and conduct with fidelity and honesty. We are undoubtedly bound to construe penal statutes strictly; and not to extend them beyond their obvious meaning by strained inferences. On the other hand we are bound to interpret them according to the manifest import of the words, and to hold all cases, which are within the words and the mischiefs, to be within the remedial influence of the statute. And this is what I understand by expounding a statute liberally, as to the offence. On the whole, the words of the 50th section embrace the present case; and I do not feel at liberty, upon ingenious suggestions, to narrow these words, so as to save from their operation a case, also fully within the mischiefs which the legislature designed to remedy. I affirm the decree of the district court. Condemned.